**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HARRY ANTHONY SCHEINA, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 18-03210-CV-S-BP** |
| **v.** | ) | |
| | ) | |
| **JAMES SIGMAN, Sheriff of the Texas** | ) | **JURY TRIAL DEMANDED** |
| **County, MO, Individually and** | ) | |
| **In his official capacity; JENNIFER** | ) | |
| **TOMASZEWSKI, Individually** | ) | |
| **COUNTY OF TEXAS, MISSOURI** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

COMES NOW Harry Scheina, III, by and through his undersigned counsel, and amends

his original civil rights complaint file pursuant to 42 U.S.C. § 1983.  Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1.     This lawsuit arises from Texas County (Mo) Sheriff's Department's ("TCSD") deliberate

       indifference to Plaintiff Harry Anthony Scheina, III's ("Scheina") medical needs and

       denial of adequate, reasonable, and necessary medical care for Scheina's fractured

       mandible. Scheina entered Texas County Jail with a severely fractured mandible which

       was plainly evident to anyone who came in contact with him from the broken surgical

       hardware present in Scheina's mouth.  As a result of the policies and customs established

       and instituted by the County of Texas ("Texas County") and Sheriff James Sigman

       ("Sigman"), as well as the personal involvement and actions of Sigman and Jailer/Jail

       Administrator Jennifer Tomaszewski ("Tomaszewski"), Scheina was denied reasonable

1

and necessary medical treatment despite Scheina having an injury which required surgery and multiple scheduled appointments with an outside surgeon to address his medical issues. Rather than fulfill their obligations and responsibilities to ensure Scheina received reasonable and necessary medical treatment, the defendants refused and obstructed Scheina's medical care. Tomaszewski directed Scheina's scheduled medical appointment be canceled, and it was. Sigman refused to transport Scheina for medical treatment. As well, both Tomaszewski and Sigman threatened to continue to withhold treatment from Scheina unless he pled guilty to his pending criminal charges. In addition, Texas County has a long, established history of insufficiently funding the Texas County Sheriff's Department with the monies needed to provide reasonable and necessary medical care to jail inmates/detainees. Texas County's insufficient funding not only contributed to the above situation with Scheina, but also contributed to Sigman's and, by extension, TCSD's policies and customs of refusing to pay medical care for inmates by various means, including but not limited to: a) insufficiently staffing Texas County Jail to provide transport to inmates for medical care; b) refusing and failing to transport/detainee inmates to medical appointments; c) refusing to pay for medical care costs incurred by inmates/detainees in Texas County Jail custody; d) requiring inmates/detainees to pre-pay for dental care before the inmate/detainee would receive such care; and e) attempting to skirt responsibility for paying for inmate/detainee medical care by forcing inmates/detainees to sign a release form shifting the burden of the cost of care to the inmate/detainee.

2.     Scheina alleges that he has been denied access to adequate, reasonable, and necessary medical treatment, care, and facilities; that Texas County corrections officials and their

employees have failed and refused to transport Scheina to medical appointments with his physician, and failed and refused to carry out and/or complete physician's treatment plans and orders.

3.     Scheina alleges further that the acts and/or policies and practices of the defendants are knowing, deliberate and intentional, with disregard for the health and well-being of Scheina and that such acts, policies and practices disregard his civil rights, including the 14th and/or 8th Amendments, are shocking to the conscience of civilized persons, and are intolerable in a society purportedly governed by laws and considerations of due process.

## JURISDICTION AND VENUE

4.     This action is brought pursuant to 42 U.S.C. § 1983, the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over Scheina's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a).

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 because the events giving rise to Scheina's claims occurred in Texas County, Missouri, and the Defendants reside in this judicial district.

## PARTIES

6.     Plaintiff Harry Anthony Scheina, III ("Scheina") was, at all relevant times herein, a pre-trial detainee at Texas County Jail.  Scheina was continuously incarcerated in the Texas County Jail between the dates of June 5, 2017, and July 7, 2017. Scheina is currently a state prison inmate confined in the Maryville Correctional Center in Maryville, State of Missouri.

7.     Defendant County of Texas ("Texas County") is a local public entity under the laws of the State of Missouri established pursuant to §§ 46.040 and 46.156 RSMo.

8.	Defendant James Sigman ("Sigman") was, at all times relevant herein, the Sheriff of Texas County, Missouri. As the duly elected Sheriff of Texas County, Sigman operates in his official capacity as the head of TCSD. Sigman was also the Warden of the Texas County Jail, where he was given custody and charge of Scheina and was responsible for Scheina's protection, as well as for the hiring, training, and supervision of all personnel necessary to operate and maintain the Texas County Jail. Sigman was also involved in the daily operations of the Texas County Jail, including authorizing or denying the transport of detainees. Sigman is a resident of the State of Missouri. Sigman is sued in his individual and official capacity.

9.	Defendant Jennifer Tomaszewksi ("Tomaszewski") was a jailer for TCSD in the Texas County Jail. During Scheina's incarceration in 2017, Tomaszewski was a jailer tasked with the care, custody, and control of all detainees. Due to her intimate and personal relationship with Sigman, Tomaszewski maintained an informal supervisory role over other Texas County Jail employees, including the Texas County Jail Administrator. Pamela Tripp ("Tripp") was the Texas County Jail Administrator for several years prior to her resignation on June 27, 2017. After Tripp's resignation, Tomaszewski became the Jail Administrator for the Texas County Jail and was the Jail Administrator of Texas County Jail during the last part of Scheina's incarceration in 2017. During this time, she was responsible for the training and supervision of all personnel therein and the care, custody, and control of all detainees within the Texas County Jail. Tomaszewski is sued in her individual capacity.

10.	All mentioned defendants were acting within the scope and course of their employment at the times of the incidents giving rise to the causes of action. All defendants have acted

and continue to act under the color of law in the State of Missouri at all times relevant to this complaint. Their deprivations of Scheina's clearly established constitutional rights are set forth in the following statements of facts and causes of action.

## STATEMENT OF FACTS

11. On or about May 16, 2017, Scheina was assaulted by another male in Mountain View, Missouri.

12. As a result, Scheina was transported to the emergency department at Ozarks Medical Center ("OMC") in West Plains, MO. There he was diagnosed with a mandibular fracture.

13. Due to the severity of his injuries, Scheina was transferred from OMC to Cox South Hospital in Springfield, Missouri, where he was diagnosed with a displaced fracture of the mandible.

14. On or about May 16, 2017, Dr. Christopher Meyer, a specialist with Oral and Maxillofacial Surgery Group ("OMS") in Springfield, performed emergency maxillofacial surgery on Scheina at Cox Medical Group in Springfield, Missouri, to repair Scheina's broken mandible.

15. During this surgery, Dr. Meyer placed surgical hardware into Scheina's mouth to hold his jaw in place.

16. Scheina was discharged from Cox South Hospital on May 20, 2017. Dr. Meyer prescribed an antibiotic and placed Scheina on a liquid diet.

17. Scheina took this antibiotic as prescribed.

18.     On or about May 25, 2017, Scheina was seen by Dr. Meyer at OMS for a post-operative follow up. Dr. Meyer noted the surgical hardware was intact and there were no signs of infection.

19.     On or about June 3, 2017, Scheina was working as a logger when his surgical hardware came dislodged in his mouth.

20.     As a result, Scheina was transported to the emergency department at Cox Hospital in Springfield, MO where he was examined.

21.     Scheina's surgical hardware was broken in several places. His mandible remained fractured. When he was discharged from the hospital on June 3, 2017, Scheina was directed to follow up with Dr. Meyer at OMS.

22.     On June 5, 2017, Scheina was examined by Dr. Meyer at OMS to address the issues with Scheina's surgical hardware.

23.     As part of a treatment plan for Scheina, Dr. Meyers prescribed Keflex, an antibiotic to be taken orally for 7 days with one refill allowed, and Percocet, a pain medication.

24.     Dr. Meyer also scheduled Scheina for a second surgery on or about June 9, 2017, to again repair Scheina's broken jaw.

25.     On or about June 5, 2017, as he traveling to Pomona, Missouri from Springfield, Missouri, Scheina was arrested in Mansfield, Wright County, Missouri on an outstanding warrant from Texas County, Missouri.

26.     On or about June 5, 2017, Scheina was transported to Houston, Missouri and confined at the Texas County Jail as a pre-trial defendant pursuant to criminal proceedings in the Texas County Circuit Court, State of Missouri.

27. At the time Scheina was first incarcerated in Texas County Jail, he provided Texas County Jail personnel, including Defendant Tomaszewski, with a detailed history of his injuries, medical treatment, and care.

28. Scheina informed Texas County Jail personnel, including Defendant Tomaszewski, specifically of his impending surgery date as well as the antibiotic and pain medication prescriptions and need for special soft food diet.

29. Scheina's antibiotic prescription and pain medication prescription were taken from him and placed in his medical file.

30. Scheina filed a request for medical attention on June 6, 2017, complaining of pain in his jaw and also requesting to be provided with his antibiotic.

31. Scheina was examined by Texas County Jail nurse, Wanda Etchason ("Etchason"), on or about June 7, 2017.

32. At this visit, Scheina informed Etchason of his injuries, the pain associated with his injuries, his impending surgery date, the state of disrepair of his surgical hardware, the pain associated with the broken surgical hardware, his need for a special soft food diet, and his need to have his antibiotic and pain medication prescriptions filled.

33. Etchason referred him to see Texas County Jail's doctor, Dr. Arthur Bentley (Dr. Bentley") who was scheduled to see him on June 14, 2017.

34. Etchason, after phone consultation with Dr. Bentley, filled Scheina's prescription for Keflex, an antibiotic. Scheina was not given his prescribed pain medication.

35. Keflex was administered for 7 days. After the seven days, the antibiotic was discontinued on June 14, 2017.

36. On June 7, 2017, Etchason requested Scheina's medical records from Cox Hospital in Springfield, MO. Those records were received on June 9, 2017.

37. Even though Scheina informed Texas County Jail personnel about his surgery, Texas County Jail failed to transport or make arrangement to transport Scheina for his surgery on June 9, 2017.

38. On or about June 14, 2017, Scheina was examined by Dr. Bentley.

39. At this visit, Scheina informed Dr. Bentley of his injuries, the pain associated with his injuries, his missed surgery date, the state of disrepair his surgical hardware, the pain associated with the broken surgical hardware, his need for a special soft food diet, and his need for a refill of his antibiotic medicine pursuant to the original prescription.

40. Dr. Bentley diagnosed Scheina with a fractured jaw.

41. Dr. Bentley did not prescribe any medication for Scheina on this date or refill his Keflex prescription. Dr. Bentley did not prescribe Scheina a soft food diet.

42. Dr. Bentley directed that Scheina be seen by his oral surgeon, if possible.

43. Scheina did not receive medical care from June 14, 2017, through June 28, 2017, despite daily complaints to corrections officers of pain and filing multiple grievances and medical requests.

44. Etchason was able to make an appointment with OMS for Scheina to be seen by Dr. Meyer on July 6, 2017.

45. On June 25, 2017, Scheina filled out a grievance complaining of the lack of medical care for his broken jaw and gave it to a jailer. A copy of this grievance was provided to Sigman.

46. Scheina was seen by Paul Burris ("Burris"), a nurse practitioner contracted with Texas County Jail, on or about June 28, 2017.

47. At this visit with Burris, Scheina informed him of the progression of his injuries, the progression of damage to the surgical hardware, that he believed he was suffering from an infection due to the damaged surgical hardware, the pain associated with his injuries, his need for a special soft food diet, and his need for antibiotic medication.

48. Burris did not prescribe nor provide any medication for Scheina on this date. Burris prescribed a soft food diet, which Scheina finally received after more than three weeks of incarceration.

49. Tripp resigned as Texas County Jail Administrator effective June 27, 2017. Tomaszewski was promoted to jail administrator.

50. Scheina made a request for medical care on July 1, 2017. In the request, he complained again of pain in his jaw.

51. On or about July 3, 2017, Scheina was examined again by Etchason as a follow up to the June 28, 2017 examination by Burris. Scheina was to continue receiving a soft food diet. Scheina was referred to see Dr. Bentley.

52. At this visit, Scheina informed Etchason of the progression of his injuries, the progression of damage to the surgical hardware, that he believed he was suffering from an infection due to the damaged surgical hardware, the pain associated with his injuries, his need for a special soft food diet, and his need for antibiotic medication.

53. During his incarceration, Scheina's family called the Texas County Jail numerous times to ask that medical care be provided for Scheina's jaw.

54. On July 4, 2017, in response to his family's calls to Texas County Jail, Scheina was pulled from his housing pod by Sigman and Tomaszewski. Sigman and Tomaszewski told Scheina that he would not get treatment for his jaw unless he pled guilty to the charges and got out of Texas County Jail.

55. Prior to this threat to Scheina, Sigman and Tomaszewski made it clear to Texas County Jail medical personnel and staff that Scheina was not going to be transported for medical care.

56. In addition, Tomaszewski and Sigman threatened Scheina with segregated isolation if his family's calls continued.

57. Sigman's indifference to the medical needs of inmates was not isolated to Scheina, as he frequently refused to transport detainees to medical appointments outside of the jail.

58. Tomaszewski would cancel inmate medical appointments and not allow inmates to be transported to these appointments.

59. Scheina's July 6, 2017, appointment with OMS was canceled by or at the direction of Tomaszewski, and Scheina was not transported to OMS.

60. Scheina pled guilty to his pending charges on July 7, 2017, in order to be released from Texas County Jail and receive treatment for his injuries.

61. Throughout his incarceration at Texas County Jail, Scheina's mouth consistently bled because of the exposed and deteriorating surgical hardware.

62. Throughout his incarceration, pieces of Scheina's surgical hardware deteriorated and fell out of his mouth.

63.     Scheina gave these pieces to Tomaszewski to be kept in his property. During these interactions, Tomaszewski accused Scheina of malingering and would taunt Scheina's condition.

64.     During his incarceration, Tomaszewski refused to provide Scheina with a soft food diet to account for his inability to chew hard food. Scheina did not receive a soft food diet until weeks after his arrival in Texas County Jail.

65.     Prior to receiving his soft food diet, Tomaszewski purposely provided Scheina with hard food such as apples or chips even though Scheina repeatedly told her it caused him extreme pain to chew these foods.

66.     The food Scheina was forced to eat by Tomaszewski caused Scheina immense pain and further damaged his surgical hardware.

67.     During his incarceration at Texas County Jail, Scheina continued to report and indicate pain in his mouth, face, and jaw, on a daily basis; however, Scheina's needs for specialized treatment and care were ignored and/or refused by Defendants and their employees, and he was taunted or accused of "malingering" by Texas County Jail personnel, including Tomaszewski, and/or their employees.

68.     Scheina requested medical requests and grievance forms almost daily. Tomaszewski refused to give Scheina medical request forms and grievance forms during his incarceration.

69.     When he was allowed by other corrections officers, Scheina initiated and/or filed grievances arising from the foregoing. At no time were his grievances addressed by Sigman or Tomaszewski, except to the extent that his medical care was denied and

Sigman and Tomaszewski telling Scheina he would not get medical care unless he pled guilty.

70.   In addition, Tomaszewski destroyed inmate grievances on several occasions.

71.   Sigman and Tomaszewski were involved in an extra-marital, intimate and sexual relationship. Their relationship emboldened Tomaszewski to act with impunity towards the inmates/detainees at Texas County Jail, including but not limited to, the actions she took, as described above, to obstruct and delay Scheina from receiving reasonable and necessary medical care.

72.   Further, when complaints were received by Sigman concerning Tomaszewski's behavior, Sigman would indicate, "What [Tomaszewski] says, goes." This was to both inmates and other jail staff alike, and preceded her promotion to jail administrator.

73.   Scheina was seen on July 9, 2017, at OMC in West Plains, MO.  A CT w/ intravenous contrast was performed. Beyond the existing hardware issues noted, Scheina was diagnosed with an extensive bacterial infection in both anterior mandible soft tissue and the left sublingual and submandibular space.

74.   On July 13, 2017, Scheina was examined by Dr. Meyer at OMS.  Dr. Meyer noted that OMS had made plans to see Scheina through the jail but the planned treatment was cancelled by TCSD personnel.

75.   On July 17, 2017, Dr. Meyer finally performed the second maxillofacial surgery on Scheina at Cox Medical Group.

76.   Scheina continues to suffer from the lack of appropriate medical care he received.

77.   The deteriorating hardware and potential for infection, if left untreated, constituted a known risk to Scheina's health.

78. Pursuant to §§ 50.540, 50.610, 221.020, 221.080, and 221.120 RSMo, Texas County is responsible for providing funds to insure that the needs of the inmates and detainees of Texas County Jail are properly met, including medical care. Medical care includes transporting inmates to medical appointments outside of Texas County Jail.

79. TCSD and Texas County are financially responsible for providing medical care to inmates, including that care which is received outside of jail, unless that inmate has a means for payment such as insurance. For those inmates that do not have health insurance, including Scheina, they may be required to reimburse Texas County and TCSD for the medical care received per Missouri law.

80. Many inmates/detainees of Texas County Jail, including Scheina, do not have means for payment for medical care; therefore TCSD and Texas County are financially responsible for the medical care of the majority of its inmates/detainees.

81. Texas County contracts with Advanced Correctional Healthcare, Inc. ("ACH") to provide medical services to inmates. Etchason and Dr. Bentley are employed through ACH.

82. Etchason, Burris, and Dr. Bentley are part-time medical personnel. Dr. Bentley sees inmates/detainees only once every other week. Burris see inmates/detainees every other week alternate to Dr. Bentley. Etchason sees inmates/detainees only three days per week.

83. Sigman, in his official capacity, had the final policymaking authority for Texas County when it comes to inmates'/detainees' care.

84. Texas County and Sigman, in his official capacity, have a policy or custom to refuse to pay for medical care for inmates beyond this contract with ACH.

85. In a letter addressed to Texas County Memorial Hospital ("TCMH"), dated April 11, 2018, Texas County, through its commissioners, stated that it does not believe it has a duty to pay for inmates' medical care.

86. This policy or custom began in 2014 as Sigman, in his official capacity, and Texas County refused to pay for medical care for inmates/detainees at TCMH and other outside medical providers.

87. Currently, Texas County has an outstanding debt with TCMH in an amount over $200,000.00 at the last reporting relating to inmate care. Texas County has refused to pay for this medical care resulting in TCMH no longer providing services to inmates except for emergency situations.

88. With respect to the delinquency and its fiduciary responsibilities, Texas County, through its commissioners, has said, "The folks held at the county jail are there on state charges. They have not been convicted of any crimes and there are alternatives from the court (referencing bonding out)."

89. Texas County, through its commissioners, has also stated, "if you have a person visiting your home, they fall ill and you transport them for medical help, should you pay the bill?," equating inmates/detainees held against their will to invited house guests and demonstrating its complete disregard for the civil rights and medical needs of those involuntarily but completely in its care.

90. Texas County and Sigman established a policy or custom to avoid paying for inmate/detainee medical care through unconstitutional means, including but not limited to: a) insufficiently staffing Texas County Jail to provide transport to inmates for medical care; b) refusing to transport/detainee inmates to medical appointments; c) refusing to pay

for medical care costs incurred by inmates/detainees in Texas County Jail custody; d) requiring inmates/detainees to pre-pay for dental care before the inmate/detainee would receive such care; and e) attempting to skirt responsibility for paying for inmate/detainee medical care by forcing inmates/detainees to sign a release form shifting the burden of the cost of care to the inmate/detainee.

91.    The policy and custom of Texas County providing insufficient funds for necessary medical care shows a deliberate indifference to the serious medical needs of Scheina, and other inmates.

92.    Insufficient funding has contributed to the custom and practice by Sigman of not transporting inmates and detainees, including Scheina, to outside medical providers for treatment of serious medical conditions.

93.    Texas County's and Sigman's attitudes toward inmates/detainees and their medical care, including the funding of medical care, show Texas County's complete disregard for its constitutional and statutory obligations, and its deliberate indifference to Scheina's serious medical needs and clearly established federally protected rights.


### COUNT I
### DELIBERATE INDIFFERENCE TO SCHEINA'S
### MEDICAL NEEDS IN VIOLATION OF 42 U.S.C.§ 1983-
### DEFENDANT JENNIFER TOMASZEWSKI

COMES NOW, Plaintiff, by and through counsel, and for his cause of action against Defendant Jennifer Tomaszewski, in her individual capacity, under Count I in the above-reference matter, alleges and states as follows:

94.    Scheina incorporates herein by reference each and every allegation contained in paragraph 1-93.

95. Scheina had a serious medical need for treatment for his broken mandible and mandibular infection, which had been diagnosed by a physician as requiring treatment and was so obvious that even a layperson easily recognize the need for a doctor's attention.

96. Defendant Tomaszewski, in her individual capacity, was aware of and knew about Scheina's serious medical need.

97. As described above, Defendant Tomaszewski, in her individual capacity, failed to allow Scheina to receive prompt reasonable and necessary medical care to the aforementioned mandible fracture after Scheina was incarcerated.

98. Defendant Tomaszewski, in her individual capacity, obstructed and prevented Scheina from receiving reasonable and necessary medical care by the foregoing actions, including, but not limited to: a) failing to provide grievance and medical request forms to Scheina; b) destroying grievances completed by Scheina; c) canceling or causing to be canceled Scheina's scheduled appointment at OMS; d) refusing for Scheina to be transported to any medical appointments; and e) threatening to place Scheina in a segregated cell if his aunt continued to call the Sheriff's Department and demand that Scheina be transported for medical attention; and f) telling Scheina he would not receive treatment unless he pled guilty.

99. As demonstrated above by the alleged, incorporated facts, including but not limited to her directing Scheina's medical appointment be canceled and telling Scheina he would not receive treatment unless he pled guilty, Defendant Tomaszewski, in her individual capacity, maliciously obstructed Scheina's reasonable and necessary medical care for the purpose of using pain and suffering as an instrument to coerce him in to pleading guilty.

100.  Defendant Tomaszewski, in her individual capacity, acted to withhold and/or prevent Scheina from receiving reasonable and necessary medical care for non-medical reasons, including, but not limited to: coercing Scheina to plead guilty and to avoid financial liability on TCSD's behalf.

101.  Defendant Tomaszewski, in her individual capacity, with knowledge of Scheina's medical needs, and with deliberate indifference, acted in such manner as to prevent Scheina from obtaining needed medical treatment and care and/or to prevent needed medical treatment and care from reaching Scheina thereby endangering Scheina's health and well-being.

102.  The actions of Defendant Tomaszewski, in her individual capacity, were performed under color of state law, exhibited deliberate indifference to Scheina's serious medical needs, and violated Scheina's clearly established rights under the Eighth and Fourteenth Amendment to the United States Constitution.

103.  As a direct and proximate result of the actions of the Defendant Tomaszewski in failing to allow Scheina to receive prompt and adequate medical care and actually obstructing such care, Scheina was damaged and subjected to increased pain, infection, the threat of serious physical injury, and mental anguish.

104.  It is and was clearly established law that delay in providing medical care for conditions, such as Scheina's fractured and infected mandible, which result in continued and unnecessary pain constitutes deliberate indifference to an inmate's serious medical need and violates an inmate's clearly established constitutional rights of which a reasonable in her person would have known.

105. The conduct of Defendant Tomaszewski was malicious and recklessly indifferent to Scheina's federally protected and clearly established civil rights, and medical needs, justifying an award of punitive damages in order to punish the defendant from engaging in the conduct, stop the conduct, deter others from engaging in like conduct, and prevent the defendant from engaging in such conduct again.

WHEREFORE, Scheina requests that this Court grant him the following relief against the named Defendant Tomaszewski:

    A.  Judgment for compensatory damages in an amount to be determined at trial;

    B.  Judgment for punitive damages to be determined at trial;

    C.  An award of the costs of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988;

    D.  Such other relief as the Court deems appropriate.

**COUNT II**
**DELIBERATE INDIFFERENCE TO SCHEINA'S**
**MEDICAL NEEDSIN VIOLATION OF 42 U.S.C. § 1983**
**DEFENDANT JAMES SIGMAN**

COMES NOW, Plaintiff, by and through counsel, and for his cause of action against Defendants Sigman, in his individual capacity, under Count II in the above-reference matter, alleges and states as follows:

106. Scheina incorporates herein by reference each and every allegation contained in paragraph 1-105.

107.	Scheina had a serious medical need for treatment for his broken mandible and mandibular infection, which had been diagnosed by a physician as requiring treatment and was so obvious that even a layperson easily recognize the need for a doctor's attention.

108.	Defendant Sigman, in his individual capacity, was aware of and knew about Scheina's serious medical need.

109.	As described above, Defendant Sigman, in his individual capacity, failed to allow Scheina to receive prompt reasonable and necessary medical care to the aforementioned mandible fracture after Scheina was incarcerated.

110.	Defendant Sigman, in his individual capacity, obstructed and prevented Scheina from receiving reasonable and necessary medical care by refusing to transport Scheina to his medical appointments.

111.	As demonstrated above by the facts alleged above, incorporated herein, including but not limited to Sigman refusing to transport Scheina to his medical appointments and telling Scheina he would not receive treatment unless he pled guilty, Defendant Sigman, in his individual capacity, actually obstructed Scheina's reasonable and necessary medical care for the purpose of using pain and suffering as an instrument to coerce him in to pleading guilty.

112.	Defendant Sigman, in his individual capacity, acted to withhold and/or prevent Scheina from receiving reasonable and necessary medical care for non-medical reasons, including, but not limited to: coercing Scheina to plead guilty and to avoid financial liability on TCSD's behalf.

113.	Defendant Sigman, in his individual capacity, with knowledge of Scheina's medical needs, and with deliberate indifference, acted or failed to act in such manner as to prevent

Scheina from obtaining needed medical treatment and care and/or to prevent needed medical treatment and care from reaching Scheina, thereby endangering Scheina's health and well-being.

114.    The actions of Defendant Sigman, in his individual capacity, exhibited deliberate indifference to Scheina's serious medical needs, were performed under color of state law, and violated Plaintiff's clearly established rights under the Eighth and Fourteenth Amendment to the United States Constitution

115.    As a direct and proximate result of the actions of the Defendant Sigman, in his individual capacity, in failing to allow Scheina to receive prompt and adequate medical care and actually obstructing such care, Scheina was damaged and subjected to increased pain, infection, the threat of serious physical injury, and mental anguish.

116.    It is and was clearly established law that delay in providing medical care for conditions, such as Scheina's fractured and infected mandible, which result in continued and unnecessary pain constitutes deliberate indifference to an inmate's serious medical need and violates an inmate's clearly established constitutional rights of which a reasonable person in his position would have known.

117.    The conduct of Defendant Sigman was malicious and recklessly indifferent to Scheina's federally protected and clearly established civil rights, and medical needs, justifying an award of punitive damages in order to punish the defendant from engaging in the conduct, stop the conduct, deter others from engaging in like conduct, and prevent defendants from engaging in such conduct again.

WHEREFORE, Scheina requests that this Court grant him the following relief against the named Defendant Sigman, in his individual capacity:

A. Judgment for compensatory damages in an amount to be determined at trial;

B. Judgment for punitive damages to be determined at trial;

C. An award of the costs of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988;

D. Such other relief as the Court deems appropriate.

## COUNT III
## DELIBERATE INDIFFERENCE TO SCHEINA'S
## MEDICAL NEEDS IN VIOLATION OF 42 U.S.C. § 1983
## DEFENDANTS JAMES SIGMAN AND TEXAS COUNTY

COMES NOW, Plaintiff, by and through counsel, and for his cause of action against Defendants Sigman, in his official capacity, and Texas County under Count III in the above-reference matter, alleges and states as follows:

118.  Scheina incorporates herein by reference each and every allegation contained in paragraph 1-117.

119.  § 221.020 RSMo states "the sheriff of each county in this state shall have the custody, rule, keeping and charge of the jail within his county, and of all prisoners in such jail, and may appoint a jailer under him for whose conduct he shall be responsible…"

120.  § 221.120 RSMo states, "the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner."

121.  § 221.080 RSMo states, "whenever because of…the sickness of the prisoner or other cause, the sheriff shall be of the opinion that fuel, additional clothes or bedding, are necessary for any prisoner committed to jail he shall furnish the same and the costs thereof shall be paid by the county commission in the same manner as other expenses of caring for prisoners in such jail."

122. "A [local governmental entity] may be held liable for an official policy or a custom which proximately causes a constitutional deprivation. A single incident violating a constitutional right done by a governmental agency's highest policymaker for the activity in question may suffice to establish an official policy." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3rd. Cir. 1989)(citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

123. Defendant Sigman, in his official capacity, has final policymaking authority for Texas County in matters relating to the care, medical or otherwise, of the inmates/detainees held in Texas County Jail.

124. Defendant Sigman, in his official capacity, established a policy or custom that TCSD would avoid paying for inmate medical care through unconstitutional means, including but not limited to: a) insufficiently staffing Texas County Jail to provide transport to inmates for medical care; b) refusing to transport inmates to medical appointments; c) refusing to pay for medical care costs incurred by inmates/detainees in Texas County Jail custody; d) requiring inmates/detainees to pre-pay for dental care before the inmate/detainee would receive such care; and e) attempting to skirt responsibility for paying for inmate/detainee medical care by forcing inmates/detainees to sign a release form shifting the burden of the cost of care to the inmate/detainee.

125. Defendant Sigman establishing these policies in his official capacity is the functional equivalent to Texas County establishing them.

126. Defendant Sigman, in his official capacity, is aware that inmates/detainees of Texas County Jail will have serious medical needs.

127. Scheina had a serious medical need for treatment for his broken mandible and mandibular infection, which had been diagnosed by a physician as requiring treatment and was so obvious that even a layperson easily recognize the need for a doctor's attention.

128. Defendant Sigman, in his official capacity, was aware of and knew about Scheina's serious medical need.

129. Defendants Sigman's policies and/or customs caused Scheina to not receive prompt reasonable and necessary medical care to the aforementioned mandible fracture after Scheina was incarcerated for non-medical reasons, including, but not limited to: coercing Scheina to plead guilty and to avoid financial liability on TCSD's behalf.

130. Through the policies and customs established by, as well as the actions of, Defendants Sigman, in his official capacity, and Texas County were performed under color of state law, exhibited deliberate indifference to the medical needs of inmates/detainees at Texas County Jail, specifically to Scheina's serious medical needs, and violated Scehina's clearly rights under the Eighth and Fourteenth Amendment to the United States Constitution

131. As a direct and proximate result of the actions of the Defendants in failing to ensure that Scheina received prompt and adequate medical care, Scheina was subjected to increased pain, infection, the threat of serious physical injury, and mental anguish.

132. It is and was clearly established law that delay in providing medical care for conditions, such as Scheina's fractured and infected mandible, which result in continued and unnecessary pain constitutes deliberate indifference to an inmate's serious medical need and violates an inmate's clearly established constitutional rights of which a reasonable person would have known.

WHEREFORE, Scheina requests that this Court grant him the following relief, jointly and severally against the named Defendants Sigman, in his official capacity, and Texas County:

    A.  Judgment for compensatory damages in an amount to be determined at trial;

    B.  Injunctive Relief against Defendants Texas County, Missouri, and Sigman, in his official capacity; ordering them to transport inmates/detainees to medical appointments, to comply with §§ 221.120 and 221.080 RSMo, and to provide medical and dental care to inmates without requiring prepayment of care.

    C.  An award of the costs of this action against all defendants, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988;

    D.  Such other relief as the Court deems appropriate.

**COUNT IV**
**DELIBERATE INDIFFERENCE TO SCHEINA'S**
**MEDICAL NEEDS IN VIOLATION OF 42 U.S.C. § 1983**
**DEFENDANT TEXAS COUNTY**

COMES NOW, Plaintiff, by and through counsel, and for his cause of action against Defendant County of Texas under Count IV in the above-reference matter, alleges and states as follows:

133.    Scheina incorporates herein by reference each and every allegation contained in paragraph 1-132.

134.    § 221.120 RSMo states, "…the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner."

135.    § 221.080 RSMo states, "whenever because of…the sickness of the prisoner or other cause, the sheriff shall be of the opinion that fuel, additional clothes or bedding, are necessary for any prisoner committed to jail he shall furnish the same and the costs

thereof shall be paid by the county commission in the same manner as other expenses of caring for prisoners in such jail."

136.    Counties are "persons" that may be sued under 42 U.S.C. § 1983 for constitutional deprivations visited pursuant to governmental "custom" or "policy." *Monell v. Dept. of Soc. Serv. Of the City of New York*, 436 U.S. 690-691 (1978)

137.    "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 103 (1976).

138.    Defendant Texas County is responsible for providing the necessary monies to operate the TCSD and Texas County Jail. Operation costs include medical care for inmates/detainees.

139.    As demonstrated by its contract for medical services ACH, Defendant Texas County is aware that it has a responsibility to provide medical care to the inmates/detainees of Texas County Jail.

140.    Its contract with ACH demonstrates Defendant Texas County understands that paying for medical care for inmates/detainees is intrinsic within providing medical care.

141.    Defendant Texas County is aware that inmates/detainees at Texas County Jail will have serious medical needs.

142.    Defendant Texas County is aware that the serious medical needs of the inmates/detainees will require a higher level of medical care than ACH provides through its contract for part-time medical services.

143.   Defendant Texas County, as demonstrated by the above, including but not limited to, its contract for medical care with ACH, its statements regarding inmate medical care and its six figure debt relating to inmate care at TCMH, believes it has a responsibility to provide medical care, but refuses to provide the appropriate amount of monies for the level of medical care required for the inmates/detainees at Texas County Jail, including pre-trial detainees such as Scheina.

144.   Therefore, as described above, Defendant Texas County has established a policy or custom to provide insufficient funding to TCSD and Texas County Jail for inmate/detainee medical care. Texas County's refusal to sufficiently fund appropriate, reasonable, and necessary medical care at Texas County Jail contributed to Defendant Sigman's policy and custom that TCSD would avoid paying for inmate medical care through unconstitutional means, including but not limited to: a) insufficiently staffing Texas County Jail to provide transport to inmates for medical care; b) refusing to transport inmates to medical appointments; c) refusing to pay for medical care costs incurred by inmates/detainees in Texas County Jail custody; d) requiring inmates/detainees to pre-pay for dental care before the inmate/detainee would receive such care; and e) attempting to skirt responsibility for paying for inmate/detainee medical care by forcing inmates/detainees to sign a release form shifting the burden of the cost of care to the inmate/detainee.

145.   Defendant Texas County's policy or custom of insufficiently funding appropriate, reasonable, necessary medical care were performed under color of state law, exhibited deliberate indifference to the medical needs of inmates/detainee at Texas County Jail, and

specifically to Scheina's serious medical needs, and violated Scheina's rights under the Eighth and Fourteenth Amendment to the United States Constitution

146. Defendant Texas County's, policy or custom caused Scheina to not receive prompt reasonable and necessary medical care for the aforementioned mandible fracture after Scheina was incarcerated.

147. Defendant Texas County, through its practice or custom, has acted or failed to act in such manner as to prevent Scheina from obtaining needed medical treatment and care and/or to prevent needed medical treatment and care from reaching Scheina thereby endangering Scheina's health and well-being.

148. As a direct and proximate result of the actions of the Defendant Texas County in failing to sufficiently fund medical care for in Texas County Jail, Scheina was damaged and subjected to increased pain, infection, the threat of serious physical injury, and mental anguish.

WHEREFORE, Scheina requests that this Court grant him the following relief, jointly and severally against the named Defendant Texas County:

A. Injunctive Relief ordering Defendant Texas County to provide sufficient funding for adequate medical care for the inmates/detainees of Texas County Jail;

B. An award of the costs of this action against all defendants, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988;

C. Such other relief as the Court deems appropriate.

## COUNT V
### DELIBERATE INDIFFERENCE TO SCHEINA'S
### MEDICAL NEEDS IN VIOLATION OF 42 U.S.C. § 1983:
### FAILURE TO ADEQUATELY SUPERVISE TOMASZEWSKI
### DEFENDANT SIGMAN

COMES NOW, Plaintiff, by and through counsel, and for his cause of action against Defendant James Sigman, in his individual capacity, under Count V in the above-reference matter, alleges and states as follows:

149.    Scheina incorporates herein by reference each and every allegation contained in paragraph 1-148.

150.    Scheina had a serious medical need for treatment for his broken mandible and mandibular infection, which had been diagnosed by a physician as requiring treatment and was so obvious that even a layperson easily recognize the need for a doctor's attention.

151.    Defendant Sigman, in his individual capacity, was aware of and knew about Scheina's serious medical need.

152.    Defendant Sigman was the supervisor for Defendant Tomaszewski.

153.    Defendant Tomaszewski had no prior law enforcement experience before being hired as a jailer and was not qualified for the position. She was neither qualified or trained in qualified how to properly respond to inmates', including Scheina's, serious medical needs.

154.    Despite Tomaszewski's lack of qualifications, due to the intimate and sexual relationship between Defendant Tomaszewski and Defendant Sigman, Defendant Tomaszewski was given considerable power and authority as jailer and, after she was promoted, as Jail Administrator.

155. Despite Tomaszewski's lack of qualifications or training, Defendant Sigman established a policy inside the jail and TCSD at large that "What [Tomaszewski] said, goes."

156. Defendant Sigman established policies to minimize medical expenses, including but not limited to: a) refusing to transport inmates/detainees to medical appointments; b) requiring inmates to prepay for dental care prior to receiving this care; and c) TCSD refusing to pay for any care received by inmates/detainees. Tomaszewski was trained and allowed to act according to these policies to delay or deny needed medical care.

157. Defendant Sigman, in his individual capacity, failed to adequately and properly train and supervise Defendant Tomaszewski in the recognition, treatment, and care of the serious medical needs of inmates.

158. As evidenced in the aforementioned facts, as incorporated herein, Defendant Tomaszewski obstructed and prevented Scheina from receiving reasonable and necessary medical care by the foregoing actions, including, but not limited to: a) failing to provide grievance and medical request forms to Scheina; b) destroying grievances completed by Scheina; c) canceling or causing to be canceled Scheina's scheduled appointment at OMS; d) threatening to place Scheina in a segregated cell if his aunt continued to call the Sheriff's Department and demand that Scheina be transported for medical attention; and e) telling Scheina he would not receive treatment unless he pled guilty.

159. As a result of Defendant Sigman's established policies and his failure to adequately and properly train and supervise Defendant Tomaszewski, she acted to withhold and/or prevent Scheina from receiving reasonable and necessary medical care for non-medical reasons, including, but not limited to: coercing Scheina to plead guilty and to avoid financial liability on TCSD's behalf.

160. These actions of Defendant Sigman were performed under color of state law, exhibited deliberate indifference to Scheina's serious medical needs, and violated Scheina's clearly established rights under the Eighth and Fourteenth Amendment to the United States Constitution.

161. Defendant Sigman's policy regarding Defendant Tomaszewski and his failure to properly and adequately train and supervise Defendant Tomaszewski exhibited deliberate indifference to Scheina's serious medical needs, and violated Scheina's clearly established rights under the Eighth and Fourteenth Amendment to the United States Constitution.

162. It is and was clearly established law that delay in providing medical care for conditions such as Scheina's fractured and infected mandible, which result in continued and unnecessary pain, constitutes deliberate indifference to an inmate's serious medical need and violates an inmate's clearly established constitutional rights, which a reasonable person in Sigman's position would have known.

163. As a direct and proximate result of the actions of the Defendant Sigman to properly and adequately train and supervise Defendant Tomaszewski, Scheina was damaged and subjected to increased pain, infection, the threat of serious physical injury, and mental anguish.

164. The conduct of Defendant Sigman in failing to adequately and properly train and supervise Defendant Tomaszewski, was malicious and recklessly indifferent to Scheina's federally protected civil rights, and medical needs, justifying an award of punitive damages in order to punish the conduct, stop the conduct, deter others from engaging in like conduct, and prevent defendants from engaging in such conduct again.

WHEREFORE, Scheina requests that this Court grant him the following relief against the named

Defendant Sigman, in his official capacity:

    A.  Judgment for compensatory damages in an amount to be determined at trial;

    B.  Judgment for punitive damages to be determined at trial;

    C.  An award of the costs of this action, including reasonable attorneys' fees, in

        accordance with 42 U.S.C. § 1988;

    D.  Such other relief as the Court deems appropriate.


Dated:  February 19, 2019                  Respectfully Submitted,

**STEELMAN & GAUNT**

/s/ David L. Steelman

By:   _____

David L. Steelman, #27334
901 N. Pine St, Suite 110
P.O. Box 1257
Rolla, MO 65402
Telephone:    573-341-8336
Fax:          573-341-8548
dsteelman@steelmanandgaunt.com

/s/ Stephen F. Gaunt

_____

Stephen F. Gaunt, #33183
901 N. Pine St., Suite 110
P.O. Box 1257
Rolla, MO 65402
Telephone:   573-341-8336
Fax:         573-341-8548
sgaunt@steelmanandgaunt.com

**LAW OFFICE OF CHRISTOPHER  J. SWATOSH**

/s/ Christopher J. Swatosh

By:   _____

Christopher J. Swatosh, # 45845

P.O. Box 190
200 E. Washington St.
Ava, MO 65608
Telephone:      417-683-2987
Fax:               417-683-2983
cswatosh@getgoin.net

**ATTORNEYS FOR PLAINTIFF**