IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| HARRY ANTHONY SCHEINA, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18-03210-CV-S-BP |
| v. ) | |
| ) | |
| JAMES SIGMAN, *et al.* ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT TEXAS COUNTY'S
STANDING ARGUMENT**

COMES NOW Plaintiff Harry Anthony Scheina, III, by and through undersigned counsel, and pursuant to this Court's Order of May 2, 2019, responds solely to Defendant Texas County's injection of standing as follows:

I. **Introduction**

Texas County has moved to dismiss itself as a party to Plaintiff's suit. In its reply to Plaintiff's Suggestions in Opposition to Defendant Texas County's Motion to Dismiss [Doc. # 56], Texas County improperly raises the issue of standing for the first time, while simultaneously failing to raise the issue in accordance with Federal Rule 12 or object pursuant to any specific federal rule. Following Texas County's general injection of this issue in its reply suggestions, the Court instructed Plaintiff to address Plaintiff's standing as it relates to the requested injunctive relief in Counts III and IV. [Doc. # 31]. Count IV includes only prospective relief. However, Count III also includes a request for damages. Texas County is not challenging Plaintiff's standing for damages. The facts giving Plaintiff standing for injunctive relief are essentially the

1

same for both Counts III and IV. Therefore, Plaintiff addresses the issue of standing without differentiation between the two.

II.   Argument

A.  Plaintiff Has Alleged An Official Policy

Texas County objects to Plaintiff's standing for injunctive relief on the basis he is no longer incarcerated. Specifically, Texas County argues "[s]ince Plaintiff is no longer an inmate in the jail, he has no standing to make such a claim." [Doc. # 56 pg. 2]. That is an inaccurate statement of the law.  It is not a requirement Plaintiff be incarcerated for him to have standing for injunctive relief against Texas County. To establish standing, a plaintiff must show 1) an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, and not speculative that the injury will be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). For injunctive relief, Plaintiff has standing if he can establish both a likelihood of future harm and the existence of an official policy.  *Shain v. Ellison*, 356 F.3d 211, 216 (2nd Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06(1983)).

Texas County does not argue Plaintiff failed to raise an official policy. Plaintiff has clearly pled several official policies in both Counts III and IV of the Amended Complaint.  The official policies implemented by the Texas County Sheriff's Department and Texas County include, but are not limited to: insufficient funding of medical care at Texas County Jail; not transporting inmates to medical appointments; requiring inmates to pre-pay for dental services; and refusing to pay for medical care for inmates/detainees at the Texas County Jail. [Doc. # 31

pp. 21-27] Therefore, Plaintiff's standing rests solely on the likelihood Plaintiff will suffer future harm and not, as Defendant incorrectly asserts, on whether he has been released from custody.

### B. Plaintiff's Future Harm Is Highly Likely And Not Speculative

Plaintiff suffers from a real and immediate threat of future harm. Texas County is correct that Plaintiff is no longer incarcerated at Texas County Jail as he is currently housed in the Missouri Department of Corrections (DOC). However, Plaintiff's re-incarceration at Texas County Jail is almost certain. Plaintiff's current sentence was executed pursuant to §217.362 RSMo, which enrolled Plaintiff into a "long term drug rehabilitation" program within DOC. This statute allows Plaintiff to complete a rehabilitation program before reentering society on a term of probation to be supervised by Division of Probation and Parole. §217.750 RSMo. Plaintiff will finish this program in August 2019. While on probation, Plaintiff will be subject to the standard conditions set forth by the Division of Probation and Parole, which include conditions requiring Plaintiff to maintain employment, pay intervention fees[1], and court costs. Furthermore, within the 25th Judicial Circuit, and specifically Texas County, probationers are ordered to complete a determined amount of "shock" time in the Texas County Jail pursuant to § 559.026 RSMo at the discretion of an offender's probation officer in the even probation conditions are violated.[2]

Plaintiff is also an indigent individual. Several courts, including this Court, have recognized this fact through indigency determinations, including the appointments of a public

---

[1] An intervention fee is a statutorily permissible monthly fee paid to the Division of Probation and Parole for simply being on probation. The fee is to help fund community based rehabilitation and vocational programs. § 217.690 RSMo.

[2] For example, in case number 17TE-CR00391-01, the case for which Plaintiff is currently incarcerated, the Court initially ordered Plaintiff to serve 20 days shock time at the discretion of his probation officer.

defender for criminal representation. His indigency makes it likely he will be unable to pay the fees required by the terms of his probation. Plaintiff's employment opportunities are further diminished by his lack of education and reliable transportation making it highly unlikely Plaintiff will be able to maintain consistent employment. For example, in the arrest referenced in paragraph 25 of the Amended Complaint, Plaintiff was traveling by foot as he was walking the nearly 100 miles from Springfield, Missouri to his home in Pomona, Missouri because he lacked transportation. [Doc. #31 pp. 6]. Given Plaintiff's status as a felon, his long history of indigency, lack of employment opportunities, and his near illiteracy, Plaintiff will certainly return to a state of indigency upon his release from DOC and be unable to comply with the conditions of his probation. He will almost certainly be re-incarcerated in Texas County Jail, even if he never commits another crime.

*Lyons* is the only case Texas County cites which directly analyzes standing.[3] The largest hurdle *Lyons* sets for prospective relief is future harm. Future injuries cannot be too speculative or conjectural nor can they be based on the anticipation a plaintiff will violate lawful criminal statutes. *Id*. at 102. It is assumed that plaintiffs will conduct their activities within the law to avoid prosecution and conviction as well as exposure to challenged course of conduct. *Id.* As to whether the changed course of conduct is likely to recur, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

In *Lyons*, the plaintiff sued the City of Los Angeles over law enforcement's use of chokeholds after plaintiff was subjected to a chokehold during a traffic stop. In denying

---

[3] The other cases to which Texas County cites, *Martin v. Sargent*, 780 F.2d 1334 (1985), and *Wycoff v. Brewer*, 572 F.2d 1260 (1978), both address whether the respective plaintiffs' standing had been rendered moot.

4

plaintiff's standing, the Court indicated that plaintiff's future injury of being subjected to a chokehold was too speculative. Like Plaintiff, *Lyons* was not incarcerated at the time of his suit. The Court pointed out that *Lyons's* future encounters with law enforcement were naturally predicated on his future violations of the law and the speculation that the individual police officer would, in fact, use a chokehold on *Lyons*. The Court indicated this made *Lyons's* future harm too speculative.

Plaintiff's case is distinguishable from *Lyons*. Unlike *Lyons*, Plaintiff's future contact with law enforcement is not speculative. It is mandatory. Plaintiff will be required to meet regularly with his probation officer during which his probation performance will be reviewed. Missouri probation officers have authority to issue warrants and arrest probationers for any failure to comply with probation conditions. §217.722 RSMo. Therefore, Plaintiff's probation officer can arrest and sanction Plaintiff with jail time for not maintaining employment or not paying intervention fees or court costs. These incarcerations for sanctions are not subject to the due process procedures present in traditional probation violations because a judge has made it a condition of probation. § 559.026 RSMo.

Further distinguishing *Lyons*, Plaintiff's re-incarceration is not predicated on reoffending. Plaintiff's re-incarceration is predicated on two things that are largely out of his control: his financial situation and his probation status. Indigency and unemployment will prevent Plaintiff from being able to afford intervention fees each month he is on probation. *Lyons* informs the court that it must be assumed Plaintiff will act lawfully and without misconduct. However, this Court is not required to assume Plaintiff will miraculously become an individual of sufficient means to afford monthly intervention fees. It is certainly not unlawful nor misconduct to be indigent or unemployed. It is the unfortunate reality that many in Plaintiff's position face.

5

Standing does not require that Plaintiff pay his monthly bills. Requiring such would add an additional layer to standing analysis: whether a plaintiff can afford to stay out of jail.

It is almost certain Plaintiff will be re-incarcerated in the Texas County Jail as a sanction for not being able to afford to pay fees and costs, or being able to maintain employment. Once re-incarcerated, the Plaintiff will be subjected to the same official policies clearly pled in Counts III and IV, which caused exacerbation of his injuries, and complications from which Plaintiff still suffers. While Plaintiff's past injuries alone cannot be used to justify injunctive relief, Plaintiff's previous injuries from the clearly pled official policies are further evidence of the harm Plaintiff would suffer upon his return to Texas County Jail. Plaintiff has standing to seek the injuctive relief he has requested in his First Amended Complaint.

While Plaintiff does have standing, Plaintiff also notes that how and when the court must address standing is not defined. "As there is no statutory direction for procedure upon an issue of jurisdiction issue, the mode of its determination is left to the court." *Zunamon v. Brown*, 418 F.2d. 883, 886 (8th Cir. 1969)(citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)); *see* Federal Rule of Civil Procedure 12(i). Plaintiff has not sought a preliminary injunction, nor has this court granted one; therefore, Texas County is not injured or aggrieved by delaying determination of standing.

Wherefore, Plaintiff respectfully requests this Court find Plaintiff has standing to pursue his requested injunctive relief in Counts III and IV , deny Defendants requested relief for dismissal, order Defendant Texas County to answer Plaintiff's Amended Complaint, and for such other relief as this court deems just and proper.

6

Case 6:18-cv-03210-BP   Document 62   Filed 05/10/19   Page 6 of 7

Respectfully Submitted,

**STEELMAN & GAUNT**

By: /s/ Stephen F. Gaunt
_____
Stephen F. Gaunt, #33183
David L. Steelman, #27334
901 N. Pine St, Suite 110
P.O. Box 1257
Rolla, MO 65402
Telephone: 573-341-8336
Fax: 573-341-8548
dsteelman@steelmanandgaunt.com
sgaunt@steelmanandgaunt.com

**LAW OFFICE OF CHRISTOPHER J. SWATOSH**

By: /s/ Christopher J. Swatosh
_____
Christopher J. Swatosh, # 45845
P.O. Box 190
200 E. Washington St.
Ava, MO 65608
Telephone: 417-683-2987
Fax: 417-683-2983
cswatosh@getgoin.net

**ATTORNEYS FOR PLAINTIFF**